The opinion of the court was delivered by
Marr, J.
In February, 1872, Samuel and Andrew Smith purchased of C. Mehle & Co. one hundred shares, reduced to fifty, of the capital stock of the Crescent City Live-Stock Landing and Slaughter-House Company; and of C. Meble ninety shares, reduced to forty-five. The purchasers paid the price, the current market rate; and the two certificates representing these shares were delivered to them, with two powers of attorney, in each of which there was a blank for the name of the person to whom the transfer was to be made, authorizing Charles KHshaw to transfer, on the books of the Company, the shares standing in the names of C. Mehle and C. Mehle & Co., respectively.
A by-law of the corporation we presume, we do not find it in the charter, provides that “ all transfers of stock shall be recorded in the office of the said company, in a book of transfer to be kept for that purpose: ” and the two certificates in question state that the shares are traüsferrable only on the books of the company, in the one case by C. *1379 Mehle & Co. or their attorney, in the other by C. Mehle or his attorney, on the surrender of the certificates.
It appears that no notice was given to the company, and there was no transfer on the books of the company; but the certificates and powders of attorney remained in the possession of the purchasers from the date of the purchase.
Some time after this purchases the Bank of America, a judgment creditor of C. Mehle and C. Mehle & Co. in sólido, seized these shares of «took as the property of their debtors, under execution and garnishment in the hands of the company; and they were sold by the sheriff and adjudicated to Thomas Serrill. Thereupon Samuel and Andrew. Smith brought this suit to enjoin the transfer of the stock to Serrill; and they prayed that they be decreed to be the lawful owners, and be recognized as such by the company, In consequence of this suit Serrill did not pay the price of the adjudication. •
The district judge perpetuated the injunction granted in limine; ■and decreed that the Smiths be recognized to be the owners of the stock; and that it be transferred to them on the books of the company. From this judgment the company, Serrill, and the Bank of America appealed separately.
The question is, whether the title and possession vested in Samuel and Andrew Smith, by the delivery of the certificates and the powers of attorney to make the transfers on the books of the company, so that the «took was no longer subject to seizure, under execution, as the property •of C. Mehle and C. Mehle & Co., the judgment debtors.
The appellants maintain that the certificates of stock are not negotiable ; and that there was no such delivery to the Smiths as the law requires, because there was no transfer on the books of the company, and no notice given to the company. They rely on articles 2643 and 3160 of the R. C. C., the first of which declares that “ the transferree is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place”: and the latter provides that •“ when the thing given in pledge consists of a credit not negotiable,” the proof of the pledge must be by authentic act, or by act under private signature duly recorded, and a copy of the act must have been duly •served on the debtor of the credit given in pledge.” They also cite and rely upon Harris vs. the Bank of Mobile, 5 An. 538.
The law requires tradition in order to make the sale of a thing complete as to third persons; and delivery is an indispensable condition of the contract of pledge. Whatever would constitute delivery, under the -contract of sale, would be also a delivery under the contract of pledge, -and vice versa.
' The Civil Code required certain formalities, for the contract of pledge, *1380 among others a notarial act, or an act under private signature registered in the office of the notary, containing an accurate description of the thing pledged. These formalities were obstructions to commerce ; and were felt as a serious inconvenience.. In 1852 the Legislature passed an act relative to pledges, which was re-enacted in the general compilation of 1855, and in the Revised Statutes of 1870 ; and was incorporated in the R. C. C., art. 3158. The first section provides that “ When a debtor wishes to pawn promissory notes, bills of exchange, stocks, obligations, or claims upon other persons, he shall deliver to the creditor the notes, bills of exchange, certificates of stock, or other evidences of the claims or rights so pawned ; and such pawn, so made, without further formalities, shall be valid as well against third persons as against the pledgors thereof, if made in good faith.”
By section three of this act, -the substance of which is in the R. O. C., article 3160, and was in the Civil Code, article 3127, “ If a credit not negotiable be given in pledge, notice of the same must be given to the debtor.”
The stock in an incorporated company is not a debt due by the corporation to the corporators ; nor is it a credit of which the corporation is the debtor. The corporators’in the aggregate own the stock, according to their respective shares and portions ; and it can no more be said that' the shares of a corporator constitute a credit, a debt due to him by the corporation, than it could be said that the joint owners of a house or a ship are the debtors of each for his share.
It was well said in Harris vs. the Bank of Mobile, 5 An. 539, that the officers of a corporation are the keepers and possessors of the undivided property of the corporation for each and all of the stockholders ; and. the certificates of stock are the evidence of the ownership of that property in the hands of the holders. The word “ credit” is used in the act of the Legislature and in article 3160 of the R. C. C. to signify a debt, something due to one person by another; a right on the one part, and an obligation on the other, which create the relation of debtor and creditor between the two persons. It is clearly not applicable to the shares in an incorporated company, which do not constitute a debt, and of which no one is the debtor.
The second clause of article 3158, section one, of the act of the Legislature, authorizes the pledge of notes, bills, stocks, obligations, or claims upon other persons, by the delivery of the notes, or bills, or certificates of stock, or other evidences of the claims or rights so pawned, without further formalities. If the thing so pawned or given in pledge be a credit, a debt not negotiable in the legal sense of the term, due to the pledgor by another who is his debtor, then the pledge is not valid against third persons unless that debtor has been served with notice.
*1381 The R. O. 0., treating of the tradition or delivery of- the thing sold, declares that “ The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer”': article 2477 ; and, according to article 2481: “ The tradition of incorporeal rights is to be made either by the delivery of the titles and of the act of transfer, or by the use made by the purchaser, with the consent of the seller.”
We have in this case all the requirements of these two articles for perfect tradition. The certificates of stock were the evidences of ownership, the titles of the incorporeal rights -represented by them; and these certificates were delivered to the purchasers. The powers of attorney to Kilshaw, who was acting merely for the Smiths, authorizing him to make the transfers on the books of the company, were coupled with an interest which made them irrevocable. They constituted the acts of transfer, as between the sellers and the purchasers ; and no other act was necessary, or could have been required of the sellers, to divest themselves of title and possession. Having the.-certificates in their possession, the purchasers had a complete guaranty that the corporation could not transfer the stock to their prejudice, since the corporation had bound itself to hold these shares subject to transfer by the sellers or their attorneys, on the surrender of the certificates. By producing these certificates, and the powers of attorney, the Smiths could have compelled the corporation, at any time, to have the transfers made on their books ; and the corporation had no power to transfer to.any other than the holders of these certificates and the powers of attorney. The thing sold, therefore, had passed beyond the power and control of the sellers, and into the power, possession, and control of the purchasers.
Articles 2642, 2643, of the R. C. C. relate exclusively to the transfer cf credits, rights, or claims against a third person. The word “ to,” as used in article 2642, is a mistranslation of the word “ sur,” in the Code Napoleon, article 1689, from which it was copied literally into our Code. The word “ to ” does not. make sense ; and the whole context shows that the article is dealing only, with the credits, rights, and claims which the transferror has upon or against a third person who is his debtor with respect to such credit, or right, or claim.
Article 2643, which requires notice to the debtor of the transfer having taken place, is clearly not applicable to.all the credits, rights, and claims referred to in article 2642. Promissory notes and bills of exchange, essentially negotiable, pass to the transferree without notice to the debtors, the makers, accepters, drawers, indorsers ; and yet they are credits, rights, claims upon or against third persons. Article 2643, therefore, must be restricted to such credits, rights, and claims as create the relation of debtor and creditor between the transferror and him who owes, is bound to acquit these credits, rights, and claims ; and it must *1382 also be restricted to such credits, rights, and claims as are not evidenced by a negotiable instrument.
The by-law which requires transfers of stock to be recorded on the books of the corporation regulates merely the respective rights of the corporation and the individual stockholders. No one can claim to be a stockholder, and to exercise the rights of a corporator, in virtue óf a sale of stock to him, until the corporation has taken cognizance of the sale, and, by transfer on its books, has substituted the purchaser for the seller. Whether one has acquired the character and the rights of a corporator, is a question to be determined by the laws of the corporation. Whether a purchaser has acquired a good and perfect title to any property or thing, tangible or intangible, is a question to be solved by the general laws of the State applicable to the sale and transfer of such objects. Samuel and Andrew Smith may not be corporators in this company, by reason of their neglect to comply with the requirements of the charter and by-laws ; but they may, nevertheless, be the owners, by perfect titles, of the shares of stock purchased by them.
In Bank vs. Lanier, 11 Wallace, 369, the Supreme Court of the United States had occasion to consider the effect of a stipulation in certificates of stock almost identical with that in the two certificates in this case, that the stock should be transferrable only on the books and on surrender of the certificates. The court regarded the power to transfer their stock as one of the most valuable franchises that could be conferred on corporations, and said that no better form of certificate could be adopted to assure the purchaser that he can buy with safety. “ He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise.”
The court went on to say that this certificate was “ a notification to' all persons interested to know that whoever, in good faith, buys the stock, and produces to the corporation the certificates regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificate.”
We understand this to be settled law in New York, Connecticut, and New Jersey ; and we do not think the law could be different elsewhere, in the absence of positive legislation to the contrary. The distinction is plain between the requirements of the law in order that title and possession shall vest in a purchaser, and the requirements of the charter and by-laws of a corporation in order that the holder and owner of a title to shares of the stock shall receive from the company a certificate of own *1383 ership, in his own name, and be admitted to the rights and privileges of a corporator.
There is an immense amount of the wealth of the country invested in stocks of the numberless corporations which have sprung into existence within a few years past. These stocks afford a most convenient and valuable basis of credit; and they are sold to a large amount daily, at all the great commercial centers. The holder who does not wish to sell may pledge his certificates for loans and discounts to an amount approximating their market value, with a reasonable margin for possible depreciation. The pledgee does nqt desire to become the owner of the stock ; and he would not think it necessary, nor would he have the right; to surrender the pledged certificates and have the stock transferred to him on the books of the corporation. Nor do we think the validity of the pledge could be made to depend on the giving of notice to the corporation, because the corporation has no power or authority to dispose of the stock, orto transfer it, so long as the certificates are not produced and surrendered. If the pledgee were required to have the transfers made on the books of the corporation, or to .give notice, the value of these certificates as a basis of credit would be greatly impaired, particularly where the pledge is made at a distance from the domicile of the corporation.
We entertain no doubt but that the act of 1852 was designed for the public convenience by facilitating the pledge of stocks and other securities ; and it required nothing more for the perfection of the contract than the delivery of the certificate of stock. But if this suffices for the perfection of this contract, it is because the delivery of the certificate is the only delivery that can be made of the stock which it represents; and that delivery is effectual, whether it be under the contract of pledge or the contract of sale.
The certificates in this case are in the usual form : a form which has been adopted throughout the United States, as well for the benefit of corporations, by encouraging investments in stocks, as in the interest of the public, to make these stocks a secure basis of commercial transactions, whereby their value is enhanced. These certificates are not promises to pay : they contain no words of negotiability, and they are not negotiable, in the ordinary sense of the term ; but, as the court said in. Lanier’s case, 11 Wallace, 377 : “Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. They have become the basis of commercial transactions in all the large cities of the country, and are sold in open market, the same as other securities.”
We find nothing in Harris vs. Bank of Mobile, 5 An., which militates against the views we have expressed. That case is not applicable to *1384 this, because the title under which Harris claimed the stock seized by the bank was acquired more than four months after the seizure; and it was alleged that his title was simulated and fraudulent, as it afterward was proven to have been. Bank of Mobile vs. Harris, 6 An. 811.
This case is not complicated by any question of fraud or simulation in the title under which the purchasers claim, nor of pre-existing right in the seizing creditor. On the contrary, the purchase was made in good faith, at the current market rate, and in the usual course of business; and the evidences of title and the power to transfer were delivered to the purchasers long before the seizure. The title thus acquired was as complete as the nature of the objects of the purchase would admit of; and the subsequent seizure by a judgment creditor of the sellers was without effect, and it can not defeat or impair the right of the purchasers to have the shares of stock transferred to them on the books of the corporation, in accordance with the terms of the certificates and powers of attorney held by them.
The judgment appealed from is, therefore, affirmed with costs.